UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RONALD K. DRUCKER, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 97-B-1578-S |
| JUST FOR FEET INC., et al. | } |
| Defendants. | } |

**ENTERED**
SEP 29 2000

## MEMORANDUM OPINION

This action arises out of a June 17, 1996 public offering of Just For Feet, Inc. common stock (the "Offering"). Plaintiff Ronald K. Drucker ("Drucker" or "plaintiff") alleges that the defendants, Just For Feet, Inc., Harold J. Ruttenberg, Don Allen Ruttenberg, Scott C. Wynne, Robert C. Wabler, Pamela B. Ruttenberg, Adam Gilburne, William Blair & Company, and Montgomery Securities, violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") and Section 8-6-19 of the Alabama Securities Act, by issuing certain allegedly false or misleading statements in a Registration Statement and Prospectus (the "Prospectus") issued in connection with the Offering. All defendants filed motions to dismiss the Amended Class Action Complaint (the "Complaint"). Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motions are due to be granted.

### I. BACKGROUND

The following facts are taken from the Complaint, documents referenced in the Complaint, and documents filed by Just For Feet with the Securities and Exchange Commission

("SEC") relating to the Offering.[1] Plaintiff alleges that he purchased 400 shares of Just For Feet common stock "on or traceable to" the Offering. (Compl. at ¶ 12.) Plaintiff purports to represent a class consisting of all persons who purchased Just For Feet common stock on or traceable to the Offering. (*Id.* at ¶¶ 1, 23.)

Just For Feet, Inc. ("Just For Feet" or the "Company") operated retail stores specializing in brand-name athletic and outdoor footwear. (*Id.* at ¶ 13; Prospectus at 3.) Adam Gilburne, Don Allen Ruttenberg, Harold J. Ruttenberg, Pamela B. Ruttenberg, Robert C. Wabler and Scott C. Wynne (the "Individual Defendants") are present or former directors and/or officers of the Company. (*Id.* at ¶¶ 14-20.) Defendants William Blair & Company and Montgomery Securities (the "Underwriters") served as co-lead underwriters of the Offering. (*Id.* at ¶ 22.)

Plaintiff's claims in this action arise out of statements in the Prospectus relating to Just For Feet's method of accounting for the costs of opening new Just For Feet retail stores and the Company's historical financial performance. Specifically, plaintiff alleges that Just For Feet's 1995 Annual Report on Form 10-K, which was filed with the SEC and incorporated by reference in the Prospectus, contained the following statement concerning the Company's method of accounting for store pre-opening costs:

> Store Pre-Opening Costs -- costs principally for pre-opening employee salaries and travel are capitalized and amortized over the twelve months following the store opening. Such capitalized costs are incremental and directly attributable to the opening of a new store. At January 31, 1996 and 1995, unamortized pre-opening costs aggregated $3,307,000 and $1,201,000 respectively, and are

---

[1] On a motion to dismiss, the court may consider documents referred to in plaintiff's Complaint as well as public disclosure documents required by law to be and which actually have been filed with the SEC. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *see also Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1395 (N.D. Ala. 1997), *aff'd*, 140 F.3d 1043 (11th Cir. 1998).

included in other assets. (*See id.* at ¶ 28, *citing* Just For Feet's Form 10-K for the fiscal year ended January 31, 1996.) The Prospectus also stated, in two separate places, that "[s]tore pre-opening costs . . . are amortized over the 12 months following a store opening." (Prospectus at ¶¶ 14-15.) The Complaint alleges that Just For Feet's accounting for store pre-opening costs in this manner was "inappropriate" and violated Generally Accepted Accounting Principles ("GAAP")[2] because the Company should have recognized store pre-opening costs as expenses immediately upon the opening of a new store, rather than amortizing such costs over the subsequent twelve-month period.[3] (*Id.* at ¶¶ 7, 28-29, 42.) According to the Complaint, "because the Company improperly failed to [immediately] expense its pre-opening store costs as required by GAAP," the financial statements contained in the Prospectus were false and misleading. (*Id.* at ¶ 42.)

On or about March 18, 1997, Just For Feet publicly announced that it would restate its financial results for the first, second, and third fiscal quarters of 1996 to reflect a change in the Company's method of accounting for store pre-opening costs. (*Id.* at ¶¶ 35-36, 48.) Instead of amortizing such costs over a twelve-month period, the Company began recognizing such costs as expenses immediately upon the opening of a new store. (*Id.* at ¶ 49.) As explained in a press

---

[2] GAAP are "the basic postulates and broad principles of accounting pertaining to business enterprises, approved by the Financial Accounting Standards Board of the American Institute of Certified Public Accountants. These principles establish guidelines for measuring, recording, and classifying the transactions of a business entity." *SEC v. Price Waterhouse*, 797 F.Supp. 1217, 1223 n.17 (S.D.N.Y. 1992). (*See also* Compl. at ¶ 40.) Further, "GAAP is not a set of rigid rules ensuring identical treatment of identical transactions, but rather characterizes the range of reasonable alternatives that management can use." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1420 n.10 (3rd Cir. 1997).

[3] Just For Feet's independent auditors, Deloitte & Touche, approved the original accounting treatment utilized by the Company. (Just For Feet's Annual Report on Form 10-K for the fiscal year ended January 31, 1996, ("Form 10-K") at 16; Prospectus at 29.)

3

release issued by the Company on March 17, 1997, Just For Feet adopted the new accounting method -- and restated its financial statements to reflect this change. (*Id.* at ¶¶ 36, 48-49; Just For Feet Press Release, dated March 17, 1997, at 2-3.) "Including the cumulative effect of this accounting restatement on the Company's previously reported financial results, net income for the fiscal quarter ended April 30, 1996, was reduced to $1.1 million (from the previously reported $3.5 million included in the Prospectus), and earnings per share were reduced to $0.04 per share (from $0.19 reported in the Prospectus)." (Compl. at ¶ 36.) Further, "[th]is change increased operating expenses for the year ended January 31, 1997, by approximately $5,081,000 and decreased income before cumulative effect of the change in accounting principle by approximately $3,277,400." (*Id.* at ¶ 49.) Following the announcement of the change in accounting procedure, the price of Just For Feet's stock sharply declined. (*Id.* at ¶ 38.)

Plaintiff commenced this action on June 26, 1997 -- over one year after he claims to have purchased his Just For Feet shares "pursuant to the Prospectus." Motions to dismiss pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure were filed on behalf of Just For Feet and the Individual Defendants, and on behalf of the Underwriters.

During the pendency of the Motions to Dismiss, Just For Feet commenced a Chapter 11 bankruptcy proceeding, which subsequently was converted to a Chapter 7 proceeding. On August 18, 2000, Just for Feet filed a Suggestion of Bankruptcy informing the court that it filed a Petition for Relief in the United States Bankruptcy Court for the District of Delaware, Case No. 99-04110-JFF. Because of the automatic stay imposed by Section 362 of the Bankruptcy Code, plaintiff is prohibited from pursuing his claims against Just For Feet. Accordingly, all claims asserted against Just For Feet will be dismissed without prejudice to plaintiff's right to pursue such claims through or after the bankruptcy proceeding. The court notes that, in the absence of

the automatic stay, the court would reach the same result as to Just For Feet that it reaches in dismissing all claims asserted against the other defendants.

## II. DISCUSSION

### A. NO ACTIONABLE MISREPRESENTATION OR OMISSION

Plaintiff's claims under Sections 11 and 12 of the Securities Act are due to be dismissed under Fed. R. Civ. P. 12(b)(6)[4] because the Complaint does not state a claim upon which relief may be granted. Plaintiff's claims are based on facts -- *i.e.*, the Company's method of accounting for store pre-opening costs and its reported financial results based on this accounting methodology -- that were expressly disclosed in the Prospectus and are not alleged to be inaccurate. As set forth below, there is no cause of action under the federal securities laws based on the disclosure of accurate historical facts.

Section 11 of the Securities Act imposes strict liability against the issuer of securities where a registration statement contains a material misstatement or omits material facts. *See, e.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 (1983). Under § 11, a plaintiff must show that (1) he purchased a security pursuant to a registered offering; (2) the registration statement concerning the offering contained a misstatement or omission; and (3) the misstatement or omission was material. *Id.* at 382. Section 11 does not require a plaintiff to

---

[4] The court may dismiss an action "for failure of the pleading to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Such a motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)(citations omitted); *accord Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court must take factual allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994)(citation omitted). A complaint should be dismissed, however, if it is clear that no relief could be granted even crediting plaintiff's allegations of the facts.

plead or prove fraud, reliance, or scienter. *Id.* at 381-82.

Section 12(a)(2) of the Securities Act provides in relevant part:

> Any person who – (2) offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading . . . and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable . . . to the person purchasing the security from him.

15 U.S.C. §77l (a)(2). Actions under §12(a)(2) do not require a showing of scienter on the part of the defendant. *See id.*

"To be actionable, of course, a statement must . . . be misleading." *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). One "cannot be held liable for accurately reporting . . . historical data." *In re Exabyte Corp. Sec. Litig.*, 823 F. Supp. 866, 871 (D. Colo. 1993); *see also Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244-45 (N.D. Cal. 1998) (accurate "statements of historic fact . . . are simply not actionable"). Other courts therefore have dismissed federal securities law claims that are based on information that is not alleged to be inaccurate. *See, e.g., In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997) (affirming dismissal of federal securities law claims and noting that "a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data"), *cert. denied*, 523 U.S. 1106 (1998).[5]

---

[5] *Accord In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 930 (9th Cir. 1993) (misstatements consisting of historical information "not alleged to be factually inaccurate" are "clearly not materially misleading") *cert. denied*, 513 U.S. 917 (1994); *In re Tseng Labs, Inc. Sec. Litig.*, 954 F. Supp. 1024, 1027 (E.D. Pa. 1996) (dismissing securities fraud claim where company's reports of past financial results "were true"), *aff'd*, 107 F.3d 8 (3rd Cir. 1997); *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1471 (N.D. Cal. 1996) ("[a]ccurate statements of historical fact such as these are not actionable").

Moreover, courts have specifically rejected federal securities law claims based on facts similar to those in the case at bar, *i.e.*, where the defendants accurately disclosed the company's challenged accounting treatment and its financial results based on the disclosed accounting methodology. For example, in *Zucker v. Sasaki*, 963 F. Supp. 301 (S.D.N.Y. 1997), the plaintiff alleged that an accounting firm violated the federal securities laws because its client allegedly utilized an inappropriate method of accounting for goodwill associated with the acquisition of another company. 963 F. Supp. at 302-03. The court rejected these claims as a matter of law on grounds equally applicable in this case: "The statements . . . cannot form the basis for a securities fraud claim because [plaintiff] concedes that the [Company's financial statements] accurately describe[] the manner in which the goodwill from the FWM acquisition was recorded . . . . This concession undermines [plaintiff's] contention that footnote 14 [concerning goodwill] forms the basis for a securities fraud claim. *Id.* at 305.[6]

In this case, Just For Feet's 1995 10-K and/or the Prospectus disclosed not only that Just For Feet amortized store pre-opening costs over the twelve-month period following a store's opening, but also the amount of unamortized store pre-opening costs as of January 31, 1996 and

---

[6] Other courts, faced with similar facts and claims, have reached the same conclusion. *See, e.g., Vosgerichian v. Commodore Int'l*, 862 F. Supp. 1371, 1376-77 (E.D. Pa. 1994) (classification of litigation settlement as an "extraordinary item" in the company's financial statements, allegedly in violation of GAAP, was not actionable where "all relevant information about the settlement had been disclosed to investors in the same documents," and, thus, "[a]ny investor who read the . . . financial statements closely enough to see the 'extraordinary item' also saw that payment's rather profound effect on the company's net income, stated just below"); *Wells v. HBO & Co.*, 1994 WL 228842, at *9 (N.D. Ga. Apr. 19, 1994) ("[T]he market clearly understood the obvious: that if HBO recognized all its revenues from discounted [service agreement contracts] immediately, . . . [HBO] would not be reporting those revenues later. Because the market clearly understood this effect, [HBO] did not deceive the market nor misrepresent [its] finances."), *aff'd*, 67 F.3d 314 (11th Cir. 1995); *Haft v. Eastland Fin. Corp.*, 755 F. Supp 1123, 1131 (D.R.I. 1991) (allegation that "because the loan loss reserves were 'inadequate' the defendant's earnings were overstated" held not actionable under the federal securities laws).

7

1995. (Prospectus at 14, 15; Form 10-K at 12, 13, 21.) Therefore, any investor reading the Prospectus knew that if the Company's unamortized store pre-opening costs were expensed immediately upon the opening of a store, expenses would be higher and income would be lower. Under these circumstances, the defendants did "not deceive the market nor misrepresent [Just For Feet's] finances." *See Wells,* 1994 WL 228842, at *9. The fact that Just For Feet accurately disclosed its method of accounting for store pre-opening costs and its financial results based on this disclosed methodology fatally undermines plaintiff's contention that use of this accounting treatment forms the basis of a securities fraud claim.

Plaintiff raises a number of arguments that merit only brief discussion. Plaintiff asserts that the Prospectus is misleading (and the Complaint therefore states a federal securities law claim) because the Company would have reported less favorable financial results if the Company had utilized an allegedly "appropriate" method of accounting for store pre-opening costs *(i.e.,* by expensing such costs immediately). (Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Class Action Complaint ("Pl.'s Br.") at 14-18; Compl. at ¶¶ 2, 29, 36-37, 42.) Plaintiff further asserts that Just For Feet's representation that its financial statements were prepared in accordance with GAAP constituted a materially false and misleading representation. (Compl. at ¶ 40.) Under plaintiff's theory, however, any alleged deviation from GAAP that affects a company's reported financial results would be per se actionable under the federal securities laws. Such an argument ignores case law recognizing that alleged violations of GAAP, standing alone, do not necessarily state a claim under the federal securities laws. *See, e.g., Novak v. Kasaks,* 216 F.3d 300, 309 (2nd Cir. 2000); *see also Stavroff v. Meyo,* 1997 WL 720475, at *6 (6th Cir. 1997) ("differences of opinion in the use of GAAP do not constitute material omissions or misstatements").

Plaintiff also contends that Just For Feet's March 1997 change in accounting treatment for store pre-opening costs, and the restatement of its financial results for the first, second, and third quarters of 1996, to reflect such a change, amounts to an admission by defendants that the Company's original accounting methodology was inappropriate. (Compl. at ¶¶ 43-44.) Defendants assert that Just For Feet's original accounting method is a recognized, sanctioned accounting treatment under GAAP and other relevant accounting principles, and note that Just For Feet's independent auditors approved the Company's use of this accounting treatment. (Defendants' Just For Feet, Inc., Harold J. Ruttenberg, Donn Allen Ruttenberg, Scott C. Wynne, Pamela B. Ruttenberg and Adam Gilburne's Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Class Action Complaint ("Defs.' Br.") at 12.) The court need not resolve this issue. Even if the court assumes for the purposes of this motion that Just For Feet's original method of accounting for store pre-opening costs was inappropriate under GAAP, that accounting treatment nonetheless was adequately and accurately disclosed in the Prospectus, as were Just For Feet's financial results based on this accounting treatment. (Prospectus at 12, 14, 15.) Accordingly, irrespective of whether the Company's accounting methodology violated GAAP, for the reasons set forth above, the Complaint fails to plead a federal securities law claim as a matter of law. *See Spiegler v. Wills*, 60 F.R.D. 681, 682-83 (S.D.N.Y. 1973) ("It is clear that the mere allegation of a change in accounting procedure -- from one accepted practice to another -- is not sufficient in itself to state a claim upon which relief may be granted, no matter how characterized.").

Plaintiff next argues that defendants violated the Securities Act by failing to disclose that the Company's method of accounting for store pre-opening costs was "inappropriate" and in violation of GAAP. (Pl.'s Br. at 8-11; Compl. at ¶¶ 2, 3, 7, 42.) Such an allegation likewise

9

does not state an actionable claim as a matter of law because the federal securities laws do not require defendants to accuse themselves of wrongdoing, or to characterize Just For Feet's accounting methodology in the manner suggested by plaintiff. Other courts have recognized that the disclosure required by the federal securities laws "is not a rite of confession. What is required is the disclosure of material objective factual matters." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 776 (2d Cir. 1991) (citation and punctuation omitted). In *Kramer*, the court dismissed federal securities law claims that were predicated on an alleged misstatement in the company's proxy materials concerning the company's executive compensation plan because such materials "sufficiently informed . . . shareholders of the substance of the proposed adjustment [to the plan]. No more was required. If a shareholder wished to contest the legality of the adjustment, the disclosure provided all the information necessary to bring an action under state law." *Id.*[7]

Plaintiff's allegation that defendants violated the Securities Act by failing to disclose the Company's utilization of an allegedly "inappropriate" method of accounting for store pre-opening costs is, at most, a claim of failure to disclose alleged mismanagement. The United States Supreme Court in *Santa Fe Indus. v. Green*, 430 U.S. 462 (1977), made it clear that there

---

[7] *Accord Portannese v. Donna Karan Int'l, Inc.*, 1998 WL 637547, No. 97-CV-2011 CBA, at *10 n.9 (E.D.N.Y. Aug. 14, 1998) (corporate management is not required to "direct conclusory accusations at itself or to characterize its behavior in a pejorative manner"); *In re PHLCORP Sec. Tender Offer Litig.*, 700 F. Supp. 1265, 1270 (S.D.N.Y. 1988) (plaintiff's allegation that defendants failed to state that they were violating the insider trading laws, where there is no allegation that defendants omitted to disclose a fact rather than a legal conclusion, does not state a securities law claim); *Condec Corp. v. Farley*, 573 F. Supp. 1382, 1386 (S.D.N.Y. 1983) (noting that "an admission of liability for ERISA and securities laws violations" is not required under § 13d of the Securities Exchange Act of 1934); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982) (company had no obligation to disclose that "there was substantial undercapitalization and excessive debt financing" where its "capitalization and debt structure were fully disclosed in its consolidated financial reports").

is no cause of action under the federal securities laws for corporate acts that amount to allegations of corporate mismanagement or breach of fiduciary duty, even when cloaked in the language of "misstatement[s]," "omission[s]," and "non-disclosure[s]." *Id.* at 474-79. Courts therefore have "refused to embark on a course leading to a federal common law of fiduciary obligations," and have expressed "disapproval" of the use of the federal securities laws "as an avenue for access to the federal courts in order to redress alleged mismanagement or breach of fiduciary duty." *Field v. Trump*, 850 F.2d 938, 947 (2d Cir. 1988) (citations and punctuation omitted); *see also In re Craftmatic Sec. Litig.*, 890 F.2d 628, 640 (3rd Cir. 1989) (dismissing allegations involving alleged failure by the management of a corporation to characterize its financial reporting and accounting controls as inadequate and ineffective, and its "information systems" as "wholly inadequate"; according to the court, "[w]here the incremental value of disclosure is solely to place potential investors on notice that management is culpable of a breach of faith or incompetence, the failure to disclose does not violate the securities acts").[8]

---

[8] *See also Popovice v. Milides*, 11 F. Supp. 2d 638, 642 (E.D. Pa. 1998) ("neither allegations of negligent conduct, whether gross, grave or inexcusable, nor the mere allegation of mismanagement on the part of a defendant alone will suffice to support a [securities law] claim"); *Schaffer v. Timberland Co.*, 924 F. Supp. 1298, 1318 (D. N.H. 1996) ("defendants' failure to competently perform necessary functions, including those involving sound accounting and other internal controls, is not actionable under the federal securities laws"); *Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1415 (S.D.N.Y. 1996) ("even if well pled, allegations of mismanagement are not actionable" under the federal securities laws) (citation and punctuation omitted); *Greenberg v. Howtek, Inc.*, 790 F. Supp. 1181, 1187 (D. N.H. 1992) (allegations that company's Form 10-Q overstated assets because the value of certain licenses "should have been reduced to zero" did not allege a claim for securities fraud claim because "these allegations amount to corporate mismanagement and poor business judgment," not fraud, and "allegations of corporate mismanagement alone are not sufficient to implicate" the federal securities laws); *Haft*, 755 F. Supp. at 1131 (defendants' alleged failure to take "all adjustments which were necessary for a fair presentation of the consolidated financial statements" did not state a claim for securities fraud because "[f]ailing to disclose possible mismanagement or incompetence does not state a federal securities law claim").

Accordingly, for the reasons stated above, the court concludes that the Complaint does not state an actionable claim under Sections 11 and 12 (a)(2) of the Securities Act.[9]

## B. STATUTE OF LIMITATIONS

Under Section 13 of the Securities Act, claims for violations of Sections 11, 12(a)(2), and 15 must be brought within one year of the time plaintiff discovered or should have discovered an allegedly misleading statement. *See* 15 U.S.C. § 77m. In determining when a plaintiff "should have discovered" an allegedly misleading statement, a plaintiff is charged with constructive knowledge of the contents of offering documents. *See First Union Discount Brokerage Serv., Inc. v. Milos*, 997 F.2d 835, 846 n.21 (11th Cir. 1993) (knowledge of information contained in a prospectus or an equivalent document authorized by statute or regulation is imputed to investors). *Brumbaugh v. Princeton Partners*, 985 F.2d 157, 161-63 (4th Cir. 1993) ("[W]hen a prospectus sufficiently discloses the risks inherent in an investment, the investor is on inquiry notice of his claims and the limitations period begins to run from the date of sale on claims of fraud in that prospectus."). Further, "[w]hen the facts, transactions and events set out in the Complaint as creating [a] cause of action are disclosed in the Offering Memorandum, as a matter of law, plaintiff reasonably discovers what he alleges as fraud at the time of investment." *Wynne v. Equilease Corp.*, 1995 WL 764236, No. 94 CIV 4992 (LMM), at *4 (S.D.N.Y. Dec. 27,

---

[9] Defendants also contend that the Complaint must be dismissed on the additional ground that it does not plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Defs.' Br. at 5-6, 21-26; Defendants William Blair & Company, L.L.C. and Montgomery Securities Memorandum of Points and Authorities in Support of Motion to Dismiss ("Underwriters' Br.") at 19-20.) If this issue was necessary to decide the pending Motions to Dismiss, the court would be inclined to agree that the allegations of the Complaint do not pass muster under Rule 9(b). Because of the more fundamental deficiencies in the Complaint that are discussed above, however, such a finding is not necessary and the court will not address the parties' arguments under Rule 9(b).

1995); *see also Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) (statute of limitations governing Section 11 and 12 claims begins to run at the time of plaintiff's investment where, as here, the prospectus discloses the basis of the claims in the complaint).

As noted above, plaintiff's claims are based on information disclosed in the Prospectus and the Company's 1995 10-K concerning Just For Feet's method of accounting for store pre-opening costs. Under the foregoing authority, plaintiff had actual or constructive knowledge of information which he now claims was false -- the method by which Just For Feet accounted for store pre-opening costs and the effect of utilizing such accounting methodology on the Company's financial statements -- on June 17, 1996, over one year before he commenced this action.

Plaintiff argues that the statute of limitations did not start to run, *i.e.*, he could not have discovered the allegedly misleading statement in the Prospectus, until March 18, 1997, when Just For Feet announced that it would restate its reported financial results to reflect a change in the Company's accounting treatment for store pre-opening costs. (Pl.'s Br. at 28-30.) As previously noted, however, the Prospectus and the Company's 1995 Form 10-K fully and accurately disclosed the very bases for the claims asserted in this action. (Prospectus at 14, 15; 1995 Form 10-K at 12, 13, 21.) Because the facts "set out in the Complaint as creating [a] cause of action are disclosed" in the Prospectus, *see Wynne*, 1995 WL 764236, at *4, Section 13's one-year statute of limitations began to run on June 17, 1996, when plaintiff allegedly purchased Just For Feet common stock. Plaintiff did not bring this action, however, until June 26, 1997 -- more than one year after the statute of limitations had begun to run. Plaintiff's Securities Act claims,

therefore, are time-barred under Section 13 and must be dismissed as a matter of law.[10]

## C. "CONTROL PERSON" LIABILITY

In addition to alleging that all defendants are liable for primary violations of Sections 11 and 12 of the Securities Act, plaintiff also alleges the Individual Defendants are liable as controlling persons under Section 15 of the Securities Act. (Compl. at ¶¶ 82-86.) This section provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections *77k* or *77l* . . . , shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o. However, because plaintiff's primary claims under Sections 11 and 12(a)(2) are dismissed, plaintiff's Section 15 claim must be dismissed as well. *See Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396-97 (11th Cir. 1996) ("In this circuit, a defendant is liable as a controlling person . . . if he or she had the power to control the general affairs of the entity

---

[10] Relying on *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), and its progeny, defendants have also requested dismissal of plaintiff's Section 11 and 12(a)(2) claims on the ground that plaintiff lacks standing to assert such claims because the Complaint does not allege that plaintiff purchased Just For Feet common stock in the public Offering itself, as opposed to in the secondary market. (Def.'s Br. at 19-21; Underwriters' Br. at 6-8.) Additionally, the Underwriters contend that plaintiff lacked standing as to claims against them because plaintiff failed to allege that he bought directly in the Offering from the underwriters named in the complaint. (Underwriters' Br. at 8-11.) In response to these contentions, plaintiff attempted to supplement the Complaint by submitting documentation purporting to show that he purchased shares directly in the Offering. (Pl.'s Br. at 23-24, Ex. A.) The court will not consider plaintiff's evidentiary submission on a motion to dismiss. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir.1999). If the court were inclined to address this issue, it would find that plaintiff lacked standing to assert claims under Sections 11 and 12(a)(2). However, in light of the court's dismissal of the claims in the Complaint on the alternative grounds addressed herein, the court will not address this issue.

14

primarily liable at the time the entity violated the securities laws and had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability. . . . Of course, the plaintiff must also establish that the controlled person violated the securities laws.") (citation and punctuation omitted), *cert. denied*, 519 U.S. 1112 (1997); *Malin v. IVAX Corp.*, 17 F. Supp. 2d 1345, 1351 (S.D. Fla. 1998) ("Of course, without a primary violation of the securities laws, there can be no secondary violation."). Thus, plaintiff's § 15 claim is due to be dismissed as well.

### D. SECTION 8-6-19 CLAIM

Plaintiff further alleges that all defendants violated Section 8-6-19 of the Alabama Securities Act. (Compl. at ¶¶ 87-99.) Section 8-6-19 is modeled on Section 12(a)(2) of the Securities Act. *Grayco Resources, Inc. v. Poole*, 500 So. 2d 1030, 1035-36 (Ala. 1986). Alabama state and federal courts look to federal case law construing Section 12(a)(2) of the Securities Act when interpreting Section 8-6-19. *See, e.g., Ryder Int'l Corp. v. First Am. Nat'l Bank*, 749 F. Supp. 1569, 1569 (N.D. Ala. 1990), *aff'd*, 943 F.2d 1521 (11th Cir. 1991) ("Both parties acknowledge that the basic elements of the federal and state causes of action are the same and that the Alabama courts have looked to federal case law construing § 12(2)[11] in interpreting § 8-6-19.") For the reasons set forth above, the Section 12(a)(2) claim asserted in the Complaint is due to be dismissed as a matter of law. As a result, plaintiff's claim under the Alabama Securities Act must be dismissed as well. Accordingly, the court elects to exercise supplemental jurisdiction over this state law claim, and will dismiss it for the reasons stated above.

---

[11] Former § 12(2) of the Securities Act was amended in 1995, and, although it is substantially the same, it is now § 12(a)(2).

## III. CONCLUSION

Because the Complaint fails to state an actionable claim under the Securities Act or the Alabama Securities Act, and plaintiff's claims under the Securities Act are time-barred, the defendants' Motions to Dismiss are due to be granted. Plaintiff's claims against defendants Adam Gilburne, Don Allen Ruttenberg, Harold J. Ruttenberg, Pamela B. Ruttenberg, Robert C. Wabler, Scott C. Wynne, William Blair & Company, and Montgomery Securities are due to be dismissed with prejudice. Plaintiff's claims against Just For Feet, Inc. are due to be dismissed without prejudice. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this **29th** day of September, 2000.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge